Sylvester J. VAUGHNS, Jr., etc., et al.

v.

**BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY, et al.**

**NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE, et al.**

v.

**BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY, et al.**

Civ. Nos. 72–325–K, K–81–2597.

United States District Court, D. Maryland.

Jan. 8, 1985.

Supplemental Memorandum And Order June 24, 1985. Opinion Jan. 8, 1986.

Richard V. Falcon, Baltimore, Maryland, Joseph M. Hassett, George H. Mernick, III, David S. Tatel, Elliot M. Mincberg, John C. Keeney, Jr., Steven B. Rotman, Carol A. Melton, Nell Hoffman, Patricia A. Brannan and Hogan and Hartson, Washington, D.C., Thomas I. Atkins, Michael Sussman and Teresa Demchak, NAACP Special Contribution Fund, Brooklyn Heights, N.Y., William L. Robinson and Norman J. Chachkin, Lawyers' Committee for Civil Rights Under Law, Washington, D.C., for Plaintiffs.

Paul M. Nussbaum and Andrew W. Nussbaum, Mt. Rainier, Md., and George D. Solter, Alfred L. Scanlan, Jr. and Gerson B. Mehlman, Baltimore, Md., for Defendants.

MEMORANDUM AND ORDER

FRANK A. KAUFMAN, Chief Judge.

(1) On November 9, 1984, this Court in an opinion filed that date, awarded to plaintiff fees of $355,550.00 and expenses of $17,392.00, making a total award for fees and expenses of $372,942.00. Subsequently, the parties presented, as requested by the Court, their views as to a schedule of payment of the said $372,942.00 and the payment of interest therein.

(2) In accordance with this Court's said November 9, 1984 opinion, judgment is hereby entered for plaintiffs against defendants in the amount of $372,942.00.

(3) Interest will be at the rate provided in 28 U.S.C. § 1961(a), and not at the rate of 10% or any other fixed rate. This Court's November 9, 1984 opinion (*see* 598 F.Supp. 1262, 1290) is accordingly so altered.

(4) Whether or not 28 U.S.C. § 1961(a) makes mandatory the allowance of interest on an award of attorney's fees pursuant to 42 U.S.C. § 1988, *see Preston v. Thompson*, 565 F.Supp. 294 (N.D.Ill.1983), it is particularly appropriate that interest be so allowed in this case in view of the deferred payment schedule set forth *infra*.

■■■ (5) Appropriate deferment of payment of fees and expenses is, in a case of this type, within the discretionary authority of this Court. *Hutto v. Finney*, 437 U.S. 678, 692 n. 18, 98 S.Ct. 2565, 2574 n. 18, 57 L.Ed.2d 522 (1978); *Stanwood v. Green*, 559 F.Supp. 195, 201 (D.Or.1983). Herein, plaintiffs have requested that the $372,942.00 be paid as follows:

$25,000.00 on January 10, 1985

$25,000.00 on April 10, 1985

Balance on July 1, 1985.

On the other hand, defendants have requested that the $372,942.00 be paid on a different schedule, namely—

$25,000.00 on January 10, 1985

$25,000.00 on April 10, 1985

$100,000.00 on July 10, 1985

$100,000.00 on July 10, 1986

Balance on July 10, 1987.

After consideration, this Court hereby establishes the following schedule for payment of the $372,942.00:

$25,000.00 on February 10, 1985

$25,000.00 on April 10, 1985

$161,471.00 on July 10, 1985

$161,471.00 on July 10, 1986.

That schedule will enable defendants to spread most of the payment of the $372,942.00 over the School Board's fiscal years commencing July 1, 1985 and July 1, 1986.

Thus, the said schedule takes into account the budgetary problems which defendants have stressed. However, as plaintiffs have suggested, there is no indication in the record that counsel for defendants have been asked by defendants to await payment of fees and expenses on a delayed schedule. There would, on balance, seem little reason to ask counsel for plaintiffs to wait for as long in the future as July, 1987 for payment in full. On the other hand, delay of payment of the final $161,471.00 until the commencement of the School Board's fiscal year 1986 is not unduly unfair to counsel for plaintiffs in view of the provision of interest.

■■ (6) The question arises as to the date as of which interest shall commence to run on the judgment of $372,942.00. 28 U.S.C. § 1961(a) provides that "interest shall be calculated from the date of the entry of the judgment." "Ordinarily interest on a judgment runs from the date of its entry but there have been exceptional cases in which interest has been allowed from the date when the judgment should have been entered if its actual entry was delayed. 11 C. Wright and A. Miller, Federal Practice and Procedure § 2785 at 18, 19 (footnote omitted). *See also Lew Wenzel & Co., etc. v. London Litho Supply Co., Inc.*, 563 F.2d 1367 (9th Cir.1977); *Perkins v. Standard Oil Company of California*, 487 F.2d 672 (9th Cir.1973); *Stanwood v. Green*, 559 F.Supp. *supra* at 204; *see generally* Note, *Interest on Judgments in the Federal Courts*, 64 Yale L.J. 1019 (1955); Note, *Interest on Verdicts and Judgments in the State and Federal Courts*, 38 Notre Dame Law 58 (1962). There would appear to be little or no reason why the Congress would have desired to deny to a federal district court in connection with the payment of interest on an award of fees and expenses pursuant to 42 U.S.C. § 1988—a remedial section of a remedial statute—the discretion to cause interest to run on the date the judgment would have been entered but for delay. However, in the within case, there has been no delay by the parties or the Court in the entry of the judgment of $372,942.00. In this Court's

November 9, 1984 opinion, it required certain further submissions by the parties by November 23, 1984, with regard to the scheduling of payment of the $372,942.00 and the allowance of interest in connection therewith, so that this Court could enter a complete judgment order with regard to such principal and interest payments. Some of those submissions were not, in fact, received by this Court until December 19, 1984. Accordingly, interest will commence on the date hereof, namely, January 8, 1985, which is not only the date of entry of the judgment for $372,942.00, but is a date reasonably close to the first date upon which this Court could have completed its own work in connection with the issues involved in the within Memorandum and Order.

(7) All interest, with regard to the total amount of the within judgment unpaid from time to time, due and owing on each payment date upon which principal amounts of the within entered judgment are to be paid, namely on February 10, 1985; April 10, 1985; July 10, 1985 and July 10, 1986, shall be paid in full and up to date on each such payment date.

## SUPPLEMENTAL MEMORANDUM AND ORDER

(1) For the reasons set forth during a hearing held on June 7, 1985, which said hearing, in toto, was held on the record in open Court, defendants' motion for a stay of consideration of plaintiffs' supplemental motion for attorneys' fees and expenses is hereby denied.

(2) For the reasons set forth on the record during the said June 7, 1985 hearing, the motion of the City of Bowie for leave to file a brief amicus curiae is hereby granted.

(3) The amicus curiae status of several petitioners is recognized. However, for the reasons set forth on the record during the said June 7, 1985 hearing, while this Court will fully consider all briefs and other written submissions filed by or on behalf of amici curiae, this Court may not be able to await such filings before moving ahead in these cases.

(4) In its opinion of June 20, 1983, this Court found that "the Prince George's County school system has not intentionally discriminated and does not presently intentionally discriminate against black students in TAG placement, and in fact has taken and is taking affirmative steps to remedy the problem of underrepresentation of black students in the TAG program." *Vaughns v. Board of Education of Prince George's County*, 574 F.Supp. 1280, 1307 (D.Md 1983) (Kaufman, C.J.). Similarly, this Court found that "the evidence requires the conclusion that as to special education, there are no vestiges of past segregation, no intentional discrimination, and no violation of any order of this court." *Id.* at 1302. In making both findings, this Court placed the burden of proof upon plaintiffs.

In its opinion of March 28, 1985, the United States Court of Appeals for the Fourth Circuit held "that plaintiffs were entitled to a presumption that current placement disparities were causally related to prior segregation and that the burden of proving otherwise rested on defendants." *Vaughns v. Board of Education of Prince George's County*, 758 F.2d 983, 991 (4th Cir.1985) (Winter, C.J.). Accordingly, the Fourth Circuit reversed and remanded the within cases solely as to that aspect of the within litigation, for proceedings in this Court not inconsistent with its opinion.

Upon consideration of that aspect of these cases, this Court finds, and holds for the reasons set forth during the said June 7, 1985 hearing that during the trial proceedings in the within litigation which preceded the Fourth Circuit's said opinion, defendants have shown by a preponderance of the evidence that as to both the special education and TAG placement programs there are no vestiges of past segregation, no intentional discrimination, and no violation of any order of this Court.

## OPINION

The instant fee dispute, involving services rendered by counsel for plaintiffs after

the period for which such counsel obtained compensation in *Vaughns v. Board of Education of Prince George's County*, 598 F.Supp. 1262 (D.Md.1984), *aff'd*, 770 F.2d 1244 (4th Cir.1985), is the latest chapter in a case which began in 1972. The history of this litigation is reviewed in this court's said 1984 opinion and will not be repeated herein.[1] Nor is it necessary to review herein the legal principles applicable to a petition for fees and expenses of the type involved herein since those principles are set forth in this court's said 1984 opinion [2] and the Fourth Circuit's 1985 affirmance.[3] In its 1984 opinion, this court dealt with fee and expense issues relating to trial time. Herein, in parts I–V, inclusive, this court addresses plaintiffs' quests concerning fees and expenses in connection with the appeal of defendants, and the cross-appeal of plaintiffs, to the Fourth Circuit from this court's 1983 opinion. In part VI, plaintiffs seek fees and expenses relating to defendants' appeal from this court's 1984 opinion and other services performed after this court's 1984 opinion was filed.

## I. INTENTIONAL DISCRIMINATION

On cross-appeal to the Fourth Circuit following this court's opinion in *Vaughns v. Board of Education of Prince George's County*, 574 F.Supp. 1280 (D.Md.1983), *aff'd* in part, *rev'd* and *remanded* in part, 758 F.2d 983 (4th Cir.1985), plaintiffs contended that this court had erred in not holding that certain 1980 busing changes constituted intentional discrimination. The

Fourth Circuit rejected that contention.[4] The question presented herein is whether time spent by plaintiffs' counsel in connection with that unsuccessful intent argument is compensable under § 1988. A very similar issue has been previously presented with regard to time spent in trial prior to this court's aforementioned 1983 opinion and was decided with respect to such trial work in this court's said 1984 opinion. In that 1984 opinion, this court held that the time spent preparing the intent argument for trial was not fully excludable on the basis of unrelatedness because some of the information supporting the intent claim also supported the lack of unitary status claim. *Vaughns*, 598 F.Supp. at 1273. However, this court deleted time devoted *solely* to intent and further reduced the award to reflect time spent on unsuccessful, unrelated issues which were not easily isolated in the records of plaintiffs' counsel, Hogan and Hartson. *Id.* at 1274–77. In so doing, this Court used, as a guideline, a 27 percent reduction which was derived from the percentage of trial transcript pages devoted to unsuccessful, unrelated claims. *Id.* at 1276.

In the instant dispute, the only item of presently claimed compensable work which appears to be devoted solely to the intent issue is found in the declaration of Patricia A. Brannan: "12/1/83 confer with J. Hassett and L. Sturgill re intent issue on appeal .25 (hours)." Declaration of Patricia

---

1. *See Vaughns*, 598 F.Supp. at 1265–66.

2. *See Vaughns*, 598 F.Supp. at 1268–72, 1280 and 1283–85.

3. *See Vaughns v. Board of Education of Prince George's County*, 770 F.2d 1244, 1246 (4th Cir. 1985).

4. *See Vaughns v. Board of Education of Prince George's County*, 758 F.2d 983, 992–93 (4th Cir. 1985).
   On appeal, however, plaintiffs prevailed in their contention "that plaintiffs were entitled to a presumption that current placement disparities were causally related to prior segregation and that the burden of proving otherwise rested on defendants," *id.* at 991, in connection with special education and TAG place-

ment programs. On remand, this court held that "for the reasons set forth on the record during the said June 7, 1985 hearing ... during the trial proceedings in the within litigation which preceded the Fourth Circuit's said opinion, defendants have shown by a preponderance of the evidence that as to both the special education and TAG placement programs there are no vestiges of past segregation, no intentional discrimination, and no violation of any order of this Court." Order of June 11, 1985 at ——. Thereafter, plaintiffs amended their request for attorneys fees to eliminate any hours in connection with those aspects of the within appeal. Reply Memorandum at 1–2.

A. Brannan, Attachment A at 1.[5] A quarter of an hour will thus be deducted from the time of each of these three attorneys to reflect that conference.

Plaintiffs state that of the 79 pages of the briefs filed by plaintiffs with the Fourth Circuit following this court's 1983 opinion (40 in the opening brief, 27 in the reply brief, and 12 in an appendix), only 7 addressed intent. Reply Memorandum at 3 n. 1.[6] The total pages of briefs devoted by plaintiffs to arguing intent compared to the total pages of argument in those briefs, excluding pages dealing with statements of the issues and of the facts, was 50[7] to 7. For want of a better approach, the 7 to 50 ratio will be used and 14 percent of plaintiff's total time spent on appeal will be determined to be time spent on the intent issue on appeal plus an additional ¾ of an hour as indicated *supra*.

· In applying the 27 percent guideline regarding unsuccessful issues in its 1984 opinion, this court considered the declarations of each attorney, paralegal, and clerk to determine their actual involvement with unsuccessful issues and ultimately assigned deductions of 0 to 32 percent, rather than a flat 27 percent. *Vaughns*, 598 F.Supp. at 1276–77. Herein, the 14 percent reduction will be applied to anyone whose daily entries consisted primarily of items such as "appeal brief" or "appeal argument," because the intent issue was an inseparable part of the appeal process. Thus, attorneys Brannan, Cohen, Hassett, Keeney, Sturgill, and Chachkin and paralegals Slowinski and Strausberg will have their total hours reduced by 14 percent. On the other hand, attorneys Abram, Bona-

parte, Faraquhar, Hollman, Mincberg, Tatel and paralegal McCann and law clerk McDonald worked on issues such as school desegregation plans and the appointment of experts which were separate from the intentional discrimination issue. Therefore, no reduction will be made in their hours.

The adjustments in hours due to time spent on nonprevailing issues are set forth in Appendix A hereto.

## II. REASONABLE HOURS

Defendants assert that the Hogan and Hartson attorneys simply spent too much time in connection with certain elements of the appeal in 1983. Defendants cite as examples 781.15 hours spent on researching, writing, and arguing the cross-appeals, and 23.75 hours devoted to a resolution passed by the Prince George's County Board of Education. Opposition Memorandum at 4, 5. From those figures, defendants draw a conclusion of *per se* unreasonableness. Plaintiffs dispute the second figure[8] and state that defendants point to no specific unreasonable expenditure of time by plaintiffs' counsel. Reply Memorandum at 3–7. Yet it is almost impossible for defendants to be more specific since many of the time entries of plaintiffs' counsel are very general, *e.g.*, "drafting appeal brief" or "analysis re appeal issues."

In its 1984 opinion, this court did not deem 6,000 hours of attorney time in connection with the *Vaughns* trial unreasonable in its face, but did find specific instances of overstaffing, excessive time spent in certain work and a lack of cooperation among counsel. *Vaughns*, 598

---

5. That entry illustrates the problem of identifying time spent on certain issues from the Hogan and Hartson records. Mr. Hassett's corresponding entry for 12/1/83 refers to four hours of "[a]nalysis, research, and conference with J. Keeney, P. Brannan, and L. Sturgill re appeal brief," but makes no mention of intent. Declaration of Joseph M. Hassett, Attachment A at 2. Mr. Sturgill's entry cites five and one-half hours for "[l]egal research concerning ancillary programs; discussion with J. Hassett," mentioning neither intent nor Ms. Brannan. Declaration of Lowell V. Sturgill, Jr., Attachment A at 2.

6. Pages 28 through 33 in the opening brief and page 24 in the reply and answering brief.

7. Pages 15 through 38 in the opening brief and 1 through 26 in the reply brief.

8. Plaintiffs state, seemingly correctly, that defendants added the total time for any entry which included the boundary charge in calculating 23.75 hours. Due to plaintiffs' own inability specifically to subdivide multiple entries, however, a more precise calculation is not possible.

F.Supp. at 1278–79. To account for the net effect of the same, this court reduced plaintiffs' request by 10 percent, concluding that "[t]hat is an approximation but it is the best this Court can do." *Id.* at 1279. Herein, this court, in a rough justice approach, can do no better. The results of a 10 percent reduction are reflected in Appendix B hereto.

## III. THE STAY MOTION

In its 1984 opinion, this court wrote: "Plaintiffs have not asked for any compensation for work done between [the] date [plaintiffs filed their request for attorneys fees, namely, October 11, 1983] and the date of this opinion [11/9/84] with regard to the fee and expense issues. This court's understanding is that no claim will be made for compensation for such · work." *Vaughns,* 598 F.Supp. 1266 n. 5. "Plaintiffs do not seek attorneys' fees for ... time ... spent litigating the merits of plaintiffs' first request for fees." Plaintiffs' Memorandum at 4 n. 3; *see also* Declaration of Joseph M. Hassett at 5.

The parties disagree over the status of work performed by Hogan and Hartson in opposing defendants' 1983 motion to stay consideration of the attorneys' fee petition until the liability appeal was settled. Defendants view that work as excluded by note 5 in this court's 1984 opinion. Opposition Memorandum at 7. Plaintiffs contend that the stay motion was a delaying tactic which this court rejected and that recovery is fair; and thus, seemingly, argue that note 5 applies only to services relating to merit issues and not to stay issues. Reply Memorandum at 10. But, note 5's language is broad and exclusive and does not support plaintiffs' position. Reductions reflecting time spent on the 1983 stay motion are, therefore, set forth in Appendix C.[9]

## IV. REASONABLE RATE

In its 1984 opinion, this court set rates for 13 attorneys from Hogan and Hartson and 2 others. Each attorney requested his usual hourly rate and this court made certain adjustments to those rates. The primary factors which this court considered in adjusting the lawyers' standard rates were the role played in the underlying litigation, the skill displayed therein, and the prior civil rights experience of the attorney. *Vaughns,* 598 F.Supp. at 1280–83.[10]

The instant dispute involves 12 attorneys, 7 of whom worked on the *Vaughns* trial and for whom rates were set by this court in its 1984 opinion. *See id.* at 1282. Hogan and Hartson is requesting increases between 14 to 61 percent for the subsequent work of the 7 attorneys. Opposition Memorandum at 6. Defendants contend that such increases since the November 1984 award are unreasonable and should not be approved. *Id.* In response, plaintiffs note that the requested higher rates for the said seven attorneys, as well as the rates of the five new attorneys, reflect a general increase in local market rates in the period since the time prior to the filing by this court of its 1983 opinion. Plaintiffs also assert that with regard to certain of the attorneys involved in the appeal, they had gained certain other civil rights experience and that, in any event, they had prior appellate experience. Plaintiffs further contend that lesser experienced attorneys were given less demanding assignments during the appeal period to maximize efficiency. Reply Memorandum at 7–9.

A 14 to 61 percent increase can, of course, not be justified solely on inflationary grounds. In November 1984, this court based its fee award to plaintiffs on

---

**9.** Because the time sheets submitted by plaintiffs' counsel do not set forth time spent, on any given day, by issue, any time entry indicating that part of the requested hours relates to work spent on the 1983 stay motion will be excluded.

**10.** Of the five attorneys who had prior civil rights experience, four were awarded their requested rates, while the other one was cut by 6 percent. Of the remaining ten attorneys with little or no prior civil rights experience, only one was awarded his requested rate, while the other nine were cut by 11 to 45 percent. *See Vaughns,* 598 F.Supp. at 1280–82 (tables reflecting reductions in hourly fees sought by plaintiffs).

then current rates, not the average market rate over the two-year trial span (September 1981 through September 1983) for which plaintiffs sought compensation for trial work. *See Vaughns*, 598 F.Supp. at 1281. It is to be noted that November 1984 is within the time frame involved in the current dispute over appellate services, *i.e.*, October 1983 through April 1985.

As to the seven attorneys who worked in connection with the *Vaughns* trial, their rates will be increased 15 percent across the board to reflect increased experience and rising fee rates in the relevant geographic area. This "rough justice" result is reflected in Appendix D hereto.

Five of plaintiffs' attorneys who worked on the appeal did not work on the case during trial. Hogan and Hartson is requesting between $85 and $105 for their services.

Jonathan Abram joined Hogan and Hartson in November 1984. His practice at the firm has concentrated in litigation, including employment discrimination work. Hogan and Hartson is requesting $105 per hour for his services. This is the same figure requested for the work of Nell Bonaparte, an attorney with prior *Vaughns* experience whose hourly rate is reduced herein to $74.50 per hour. Since Hogan and Hartson seemingly feel that the services of these two attorneys were of comparable value, despite Mr. Abram's short time with the firm, his limited civil rights experience and the fact that his work consisted of researching and writing of memoranda, the rate of $74.50 will be used herein for Mr. Abram.

Messrs. Cohen, Farquhar, and Hollman all joined Hogan and Hartson after September 1983 and have concentrated in litigation. Seemingly, none had previous civil rights experience. In connection with the appeal after this court's 1983 opinion, those three attorneys primarily engaged in research and preparation of memoranda. Plaintiffs request $85 per hour for each attorney. In this court's 1984 opinion, Ho-

gan and Hartson's request for $85 per hour for an attorney with a seemingly similar background [11] was cut by this court to $70 per hour. *Vaughns*, 598 F.Supp. at 1282. In addition, at the same time, this court also reduced a $95 request to $75 and a $75 request to $65 for certain associates.[12] *Id.* Under the circumstances, an award of $70 per hour for the services of each of Messrs. Cohen, Farquhar, and Hollman would seem fair.

For Lowell Sturgill, an associate for whom Hogan and Hartson is requesting $95 per hour, an award of $75 per hour would seem to maintain the approach being followed herein and at the same time acknowledge the higher value placed on Mr. Sturgill's services by his law firm.

With regard to the law clerks and paralegals, *i.e.*, in connection with their work at trial, plaintiffs sought $35 to $50 per hour in the first fee case and this court cut each such request by $5 per hour. *Id.* at 1283, noting that while $50 per hour awards for paralegals had been upheld as reasonable, the work performed by such paralegals was of an unusually sophisticated nature. 598 F.Supp. at 1283. Seemingly, the work of law clerks and paralegals in connection with the *Vaughns* trial, as well as the appeal, has consisted of cite checking and other basic paralegal-type tasks. With that in mind, those rates have been set as reflected in Appendix D hereto.

## V. EXPENSES

In this case, plaintiffs are seeking reimbursement for an expense labeled "Transportation/Messenger Service" in the amount of $1,262.82. Defendants claim that it is merely the same type of transportation expenses, under a new name, which were disallowed by this court in its 1984 opinion, *Vaughns*, 598 F.Supp. at 1289, and should be similarly rejected at this time by this court. Opposition Memorandum at 7. Plaintiffs, in response, state that the new item is different: it includes none of the

---

**11.** Mr. Rotman.

**12.** Mr. Bonaparte and Ms. Brannan.

Baltimore hotel or meal costs included in the earlier petition and consists primarily of necessary messenger runs to federal court in Baltimore and defendants' counsel in Baltimore and Greenbelt, as well as runs within Washington, D.C., to pick up slip opinions and use express mail. Reply Memorandum at 10–12. Plaintiffs would appear correct in asserting that position except that any extra costs incurred because the law offices of Hogan and Hartson are located outside this district should be eliminated. That firm, having chosen to handle this litigation in this district, and being given the benefit of a "Baltimore-Washington" area fee rate analysis, should bear such extra costs. Since, however, with the exclusion of such expenses as those relating to hotels and meals in Baltimore, those extra costs would appear de minimis, plaintiffs' quest for travel expenses, reduced as indicated *infra*, is hereby granted.

The requested expenses as a whole should be reduced by the same percentage as the requested fees to reflect the considerations already discussed *supra* parts I and II. This court followed that approach in its 1984 opinion. *See Vaughns*, 598 F.Supp. at 1290. Accordingly, all expense requests are reduced by 24 percent to reflect time spent on nonprevailing issues on appeal and other not sufficiently necessary expenses.

## VI. SERVICES PERFORMED AFTER THIS COURT FILED ITS 1984 OPINION

On September 11, 1985, plaintiffs filed a Second Supplemental Motion for Attorneys' Fees and Expenses for the period from April 1, 1985 to September 1, 1985. The work giving rise to that request includes plaintiffs' opposition to defendants' appeal to the Fourth Circuit from this court's 1984 fee opinion, plaintiffs' supplemental application for fees and plaintiffs' reply memorandum to defendants' opposition thereto, plaintiffs' opposition to a second stay motion by defendants, and time spent on the instant petition through September 1, 1985.

Since plaintiffs prevailed fully on appeal in connection with this Court's 1984 fee opinion, *see Vaughns v. Board of Education of Prince George's County*, 770 F.2d 1244 (4th Cir.1985), no reduction in hours requested is necessary to adjust for nonprevailing issues. However, in accordance with the discussion *supra* part IV, a 10 percent reduction in all hours will be made to account for work not viewed as sufficiently necessary.

Two new attorneys from Hogan and Hartson are named in the second supplemental motion and thus rates must be fixed for them. William Bradford is a partner in the firm with civil rights experience. Hogan and Hartson is requesting $175 per hour for Mr. Bradford's services, the same as it requested for Joseph Hassett. Mr. Bradford may have more prior civil rights experience than Mr. Hassett, but it would seem inappropriate to pay him a higher rate for this case than Mr. Hassett, who has headed Hogan and Hartson's efforts and was commended by this court for his efforts. *Vaughns*, 598 F.Supp. at 1282. Under the circumstances, Mr. Bradford will be given the same rate as Mr. Hassett, $149.50 per hour.

Craig Hoover joined Hogan and Hartson in October 1984 and has specialized in litigation. His situation would appear quite similar to that of Messrs. Cohen, Farquhar, and Hollman. His requested fee is the same as that of those three other attorneys. Accordingly, he will be awarded the same rate, *i.e.*, $70 per hour.

Plaintiffs also request fees of $45 and $40 per hour for paralegals Milde and Rocktashel. In accord with the discussion *supra* part IV, relating to paralegal rates, those requests will be reduced by $5 per hour.

Hogan and Hartson also seeks $1,368.72 in expenses. The only questionable entry is $37.00 for "Transportation/Messenger Service." That amount is de minimis and will not be deducted. However, in accord with the discussion *supra* part V, the requested expenses will be reduced by 10 percent.

Appendices E and F set forth details relevant to plaintiffs' second supplemental motion.

## VII. OTHER GEORGIA HIGHWAY FACTORS [13]

In parts I–VI above, this court has attempted to determine the reasonable number of hours spent by plaintiffs' attorneys in connection with the services under scrutiny and a reasonable rate therefor. Multiplication of those figures result in the "lodestar" amount. *See Vaughns*, 598 F.Supp. at 1283. That amount calls for such adjustment, if any, as is required by the relevant *Georgia Highway* factors which have not already been considered *supra*. *See id.*

The preceding analysis has already included *Georgia Highway* factors 1, 3, 5, and 9. Whereas, factor 6, the contingency nature of the case, justified a 7½ percent increase in the lodestar to reflect the risk of litigation in the *Vaughns* trial, such an increase has not been sought by the plaintiffs in connection with the fee and expenses request dealt with in this opinion.

Factor 8 requires comparing the fee award with the results obtained. If a party achieved little success for the hours and dollars invested, a court may reduce the lodestar amount as excessive. Conversely, if a party achieved extraordinary results,

an increase is justified. *Hensley v. Eckerhart*, 461 U.S. 424, 428, 435–36, 103 S.Ct. 1933, 1936, 1940–41, 76 L.Ed.2d 40 (1983). On balance, factor 8 considerations require no adjustments herein. Nor do factors 4, 7, and 10–12 appear to apply in any significant way in the instant case. Accordingly, no adjustment to the lodestar amount is required herein.

## VIII. THE FUTURE

Plaintiffs shall submit to this court an Order in compliance with the within opinion on or before January 24, 1986. Defendants may submit their comments concerning that Order by February 3, 1986 and plaintiffs may submit their further comments, if any, by February 10, 1986. In the future, the parties will be required to apply the principles set forth by the Fourth Circuit in affirming this Court's 1984 opinion, that latter opinion and the within opinion, and to exercise their best efforts to agree upon fee and expense requests submitted by plaintiffs. If counsel cannot so agree, this court will appoint a Master to make recommendations to this court concerning those matters, with the fees and expenses of the Master being born by the parties and/or their respective counsel in proportions recommended by the Master and finally determined by this court to be appropriate.

APPENDIX A

Reduction for Time Spent on Nonprevailing Issues

| Attorney | Requested Hours | Intent Reduction | Subtotal |
|---|---|---|---|
| Abram | 20.50 | 0 | 20.50 |
| Bonaparte | 11.00 | 0 | 11.00 |
| Brannan | 360.25 | −50.44 | 305.81 |
| Cohen | 63.75 | −8.93 | 54.82 |
| Farquhar | 18.50 | 0 | 18.50 |
| Hassett | 325.50 | −45.57 | 279.93 |
| Hollman | 143.50 | 0 | 143.50 |
| Keeney | 143.50 | −20.09 | 123.41 |
| Mincberg | 3.50 | 0 | 3.50 |
| Sturgill | 128.75 | −18.02 | 110.73 |
| Tatel | 18.00 | 0 | 18.00 |

13. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). The 12 factors set forth in that case are discussed in this court's 1984 opinion, *Vaughns*, 598 F.Supp. at 1283–88.

| Paralegal/Law Clerk | Requested Hours | Intent Reduction | Subtotal |
|---|---|---|---|
| McCann | 13.50 | 0 | 13.50 |
| McDonald | 9.50 | 0 | 9.50 |
| Slowinski | 6.00 | −.84 | 5.16 |
| Strausberg | 9.25 | −1.30 | 7.95 |
| Others | | | |
| Chachkin | 6.40 | −1.56 | 4.84 |

## APPENDIX B

### Reduction for Unreasonable Hours

| Attorney | Subtotal A | Reduction | Subtotal B |
|---|---|---|---|
| Abram | 20.50 | −2.05 | 18.45 |
| Bonaparte | 11.00 | −1.10 | 9.90 |
| Brannan | 309.81 | −30.98 | 278.83 |
| Cohen | 54.82 | −5.48 | 49.34 |
| Farquhar | 18.50 | −1.85 | 16.65 |
| Hassett | 279.93 | −27.99 | 251.94 |
| Hollman | 143.50 | −14.35 | 129.15 |
| Keeney | 123.41 | −12.34 | 111.07 |
| Mincberg | 3.50 | −.35 | 3.15 |
| Sturgill | 110.73 | −11.07 | 99.66 |
| Tatel | 18.00 | −1.80 | 16.20 |
| Paralegal/Law Clerk | | | |
| McCann | 13.50 | −1.35 | 12.15 |
| McDonald | 9.50 | −.95 | 8.55 |
| Slowinski | 5.16 | −.52 | 4.64 |
| Strausberg | 7.95 | −.80 | 7.15 |
| Others | | | |
| Chachkin | 4.84 | −.48 | 4.36 |

## APPENDIX C

### Reduction for Work on 1983 Stay Motion

| Attorney | Subtotal B | Reduction | Award |
|---|---|---|---|
| Abram | 18.45 | 0 | 18.45 |
| Bonaparte | 9.90 | 0 | 9.90 |
| Brannan | 278.83 | −.75 | 278.08 |
| Cohen | 49.34 | 0 | 49.34 |
| Farquhar | 16.65 | 0 | 16.65 |
| Hassett | 251.94 | −17.00 | 234.94 |
| Hollman | 129.15 | 0 | 129.15 |
| Keeney | 111.07 | −4.75 | 106.32 |
| Mincberg | 3.15 | 0 | 3.15 |
| Sturgill | 99.66 | −21.00 | 78.66 |
| Tatel | 16.20 | 0 | 16.20 |

| Paralegal/Law Clerk | Subtotal B | Reduction | Award |
|---|---|---|---|
| McCann | 12.15 | 0 | 12.15 |
| McDonald | 8.55 | 0 | 8.55 |
| Slowinski | 4.64 | 0 | 4.64 |
| Strausberg | 7.15 | 0 | 7.15 |
| Others | | | |
| Chachkin | 4.36 | 0 | 4.36 |

## APPENDIX D

### Hourly Rates

| Attorney | Requested Rate | Awarded Rate |
|---|---|---|
| Abram | 105.00 | 74.50 |
| Bonaparte | 105.00 | 74.50 |
| Brannan | 115.00 | 86.25 |
| Cohen | 85.00 | 70.00 |
| Farquhar | 85.00 | 70.00 |
| Hassett | 175.00 | 149.50 |
| Hollman | 85.00 | 70.00 |
| Keeney | 145.00 | 126.50 |
| Mincberg | 120.00 | 121.25 |
| Sturgill | 95.00 | 75.00 |
| Tatel | 175.00 | 165.75 |
| **Paralegal/Law Clerk** | | |
| McCann | 40.00 | 35.00 |
| McDonald | 65.00 | 60.00 |
| Slowinski | 50.00 | 45.00 |
| Strausberg | 35.00 | 30.00 |
| **Others** | | |
| Chachkin | 175.00 | 172.50 |

## APPENDIX E

### Second Supplemental Fee Request

| Attorney | Requested Hours | 10% Reduction | Awarded |
|---|---|---|---|
| Abram | 157.00 | —15.70 | 141.30 |
| Bradford | 6.00 | —.60 | 5.40 |
| Brannan | 68.00 | —6.80 | 61.20 |
| Hassett | 29.75 | —2.98 | 26.77 |
| Hoover | 22.75 | —2.28 | 20.47 |
| Keeney | 9.00 | —.90 | 8.10 |
| Mernick | 56.50 | —5.65 | 50.85 |
| **Paralegal/Law Clerk** | | | |
| Milde | 10.50 | —1.05 | 9.45 |
| Rocktashel | 17.50 | —1.75 | 15.75 |

## APPENDIX F

Hourly Rates for Second Supplemental Fee Award

| Attorney | Requested Rate | Awarded Rate |
|----------|----------------|--------------|
| Abram | 105.00 | 70.00 |
| Bradford | 175.00 | 149.50 |
| Brannan | 115.00 | 86.25 |
| Hassett | 175.00 | 149.50 |
| Hoover | 85.00 | 70.00 |
| Keeney | 145.00 | 126.50 |
| Mernick | 115.00 | 86.25 |
| Paralegal/Law Clerk | | |
| Milde | 45.00 | 40.00 |
| Rocktashel | 40.00 | 35.00 |